# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| MATTHEW SMYER, | : | Case No. 3:20-cv-114 |
| Plaintiff, | : | |
| vs. | : | Judge Michael J. Newman |
| KROGER LIMITED PARTNERSHIP I, *et al.*, | : | Magistrate Judge Sharon L. Ovington |
| Defendants. | : | |

## DECISION & ORDER

This matter is before the Court on Plaintiff Matthew Smyer's Motion for Extension of the Discovery Deadline. (Doc. No. 38). Plaintiff contends that discovery remains outstanding, and accordingly, he needs additional time to complete discovery. *Id.* Conversely, Defendants argue that discovery—proportional to the needs of this case—has been achieved, and that additional time for discovery is unwarranted. (Doc. No. 39).

There are several categories of discovery at issue here. Plaintiff argues that he should be afforded additional time to seek (1) indexes for Defendant's "document dumps," (2) supplemental answers to Plaintiff's Second Set of Interrogatories, (3) supplemental production for Plaintiff's Second Request for Production of Documents, (4) document production for Plaintiff's wrongful discharge claims related to Kroger's aspirational policies and statements, (5) reconvened depositions of Defendants Eric Curtis and Jessica Utterback, and (6) document production related to hiring goals and objectives, store

manager promotions, severance packages, and the deposition of Monica Garnes, Chair of the Diversity, Equity and Inclusion Initiative. (Doc. No. 38, PageID 1193-97).

For the reasons set forth below, the undersigned finds that Plaintiff should be afforded additional time for discovery—until December 20, 2021—in order to (1) reconvene depositions of Eric Curtis and Jessica Utterback, (2) seek, subject to the limitations discussed below, supplemental responses for Plaintiff's Second Set of Interrogatories and Second Request for Production of Documents, and (3) seek, subject to the limitations discussed below, documents related to the hiring goals and objectives for the store manager position for the Cincinnati/Dayton Division for 2018, 2019, and 2020, documents for the five named female employees (so long as they are employees of the Cincinnati/Dayton Division) and documents related to severance packages for store managers in the Cincinnati/Dayton Division for 2019, 2020, and 2021.

### 1. Indexes for June 15, 2020 and April 21, 2021 Document Production

Plaintiff seeks indexes for Defendants' document production from June 15, 2020 and April 26, 2021, which he considers to be "document dumps." As for the documents produced on June 15, 2020, Plaintiff would like Defendants "to confirm that [he] got the Bates-stamp numbers corresponding to Kroger's official personnel file and the files kept on [Plaintiff] by Eric Curtis, Duane Hatfield, Jessica Utterback, Tony Spaeth and Andrea Cook correctly." (Doc. No. 38, PageID 1193). In support of this assertion, he cites to Exhibit 9, which he specifies is attached, but there is no such attachment.[1] *Id.*

---

[1] Plaintiff references several exhibits throughout his Motion, but did not file any exhibits with his Motion.

Defendants oppose this request by asserting that they have "repeatedly explained that the documents produced on June 15, 2020" are the personnel file and that they have provided bates stamp numbers to correspond with Plaintiff's discovery requests. Indeed, Defendants' counsel affirmed on June 15, 2020 that Defendants were producing "documents D000025-D000669…in response to [Plaintiff's] May 15, 2020 request for [his] personnel file." (Doc. No. 39-2, PageID 1246). And again, on November 17, 2020, Defendants' counsel wrote the following to Plaintiff's counsel: "In response to your emails early in this case requesting plaintiff's personnel file, we treated those as a request for the official personnel file and produced it on June 15, 2020. It contains Utterback's and Curtis's notes requested in the first question in your November 10 letter (D472-473, D479-80)." *Id.* at 1248. Furthermore, Defendants did provide bates stamp numbers for the files pertaining to Eric Curtis, Duane Hatfield, Jessica Utterback, Tony Spaeth and Andrea Cook in its response to the Second Request for Production of Documents, Request No. 1, subparts t, u, v, y and z. (Doc. No. 39-2, PageID 1214). Therefore, Plaintiff's request for additional time to complete discovery to obtain further confirmation is not well-taken.

Plaintiff also seeks additional time to obtain an index for "the 6,107 pages of documents produced on April 26, 2021…identifying what each document is that is responsive to his requests for production and the Bates-stamp numbers corresponding to each document." (Doc. No. 38, PageID 1194). However, as evidenced in Defendants' responses to Plaintiff's requests for production, Defendants have already identified the documents, with the bates stamp numbers, that are responsive to these requests. (Doc. No. 39-2, PageID 1209-1223). The request for an index for the entirety of the 6,107 pages of

3

documents seems unnecessarily duplicative given that Defendants identified corresponding bates stamp numbers in responding to Plaintiff's discovery requests. Accordingly, Plaintiff has not persuaded this Court that additional time should be afforded on this basis.

### 2. Supplemental Answers and Document Production

Plaintiff also contests Defendants' responses to his Second Set of Interrogatories and Second Request for Production of Documents. He objects to the substance of many of these responses. The undersigned finds some of Plaintiff's arguments persuasive; therefore, he shall be afforded additional time to seek supplemental responses for a specific subset of the interrogatories and requests for production, as discussed more fully below.

Interrogatories 4 and 5 of Plaintiff's Second Set of Interrogatories reflect requests for information related to Plaintiff's FMLA interference claim. (Doc. No. 39-2, PageID 1228). Defendants' responses, in relevant part, reflect that "Plaintiff did not request FMLA leave after 2017." *Id.* However, Plaintiff suggests that this may be inaccurate due to FMLA communications that he received in February 2020 and April 2020. (Doc. No. 38, PageID 1186). He cites to Exhibit 8 and Exhibit 9 in support of this assertion, but as before, these exhibits were not attached. Nevertheless, in light of these presumed communications, Plaintiff shall be permitted additional time to seek discovery related to Interrogatories 4 and 5 for FMLA leave requests that may have been submitted after 2017.

Interrogatory 21 of Plaintiff's Second Set of Interrogatories involves a request for information related to allegations of reverse sex discrimination that have been made against Kroger from January 1, 2015 to present. (Doc. No. 39-2, PageID 1236). Defendants identify that in the Cincinnati/Dayton Division, a charge was filed with the Ohio Civil

4

Rights Commission (OCRC) and a lawsuit was filed in the United States District Court for the Southern District of Ohio. *Id.* Plaintiff now seeks copies of the OCRC charge, "Defendants' position statement responding to the charge and the OCRC's no-probable-cause dismissal of the charge." (Doc. No. 38, PageID 1187). Plaintiff also seeks the case number and copies of the Complaint and Defendants' Answer for the case filed in the United States District Court for the Southern District of Ohio. *Id.* Plaintiff shall be afforded time to seek the requested documents related to the OCRC charge as well as the case number for the case filed in the United States District Court for the Southern District of Ohio, which will enable him to access case documents that are public record.

Request for Production No. 1, subpart b, asks Defendants to produce "all documents in [their] possession, including, but not limited to all personnel files, investigation files, and desk files, concerning: All Kroger employees who assumed any of Plaintiff's duties." (Doc. No. 39-2, PageID 1210). Defendants' response was "None." *Id.* at 1212. However, Plaintiff indicates that "Pam Hargis testified in her deposition that Plaintiff was suspended from the Bechtel store, Eric Alexander replaced him." (Doc. No. 38, PageID 1188). Plaintiff shall be permitted to seek the requested documents related to Mr. Alexander presuming that Mr. Alexander did in fact assume some of Plaintiff's duties.

Aside from these requests, however, this Court declines to afford Plaintiff additional time to seek supplemental responses for the remainder of his Second Set of Interrogatories and Second Request for Production of Documents. Many of Plaintiff's objections to Defendants' responses are misplaced. For instance, Plaintiff alleges that Defendants failed to provide bates stamp numbers for a sizable majority of their responses. However, this is

5

not the case. Take for example Plaintiff's Request for Production No. 1, subparts "r" through "ee," where he indicates that Defendants did not "provide the bates stamp numbers corresponding to the documents" in each individual's file. (Doc. No. 38, PageID 1190). However, directly contrary to Plaintiff's position, Defendants' response provides specific bates numbers for each of these subparts. (Doc. No. 39-2, PageID 1214). The same is true for Request for Production Nos. 1 (subparts: a, c, k, l, o, q), 4, 5, 12, 20, 22, 23, and 24.[2] (Doc. No. 39-2, PageID 1212-19).

Plaintiff also asserts that many of Defendants' responses are "dishonest" because the interrogatories and requests for production were intended for all of Kroger, and Defendants limited most of their responses to the Cincinnati/Dayton Division. (Doc. No. 38, PageID 1187-89). For example, Plaintiff requested that Defendants: "Identify by name, job title, gender, and race, each person Kroger hired from January 1, 2015 to the present." (Doc. No. 39-2, PageID 1240). Defendants' response pertained only to new hires in the Cincinnati/Dayton Division. *Id.* at 1241. This is also true for Interrogatory Nos. 18, 19, 20, 21, 22, 23, 26, and Request for Production No. 1 subparts: c-f, and j-q, 18 and 19.[3] *Id.* at 1212-13, 1234-41). Defendants argue that their responses were appropriately limited "to the Cincinnati/Dayton Division where [P]laintiff worked," and that "[i]information and

---

[2] Defendants objected to Plaintiff's Second Request for Production Nos. 20 and 21 on the grounds that the requests seek documents protected by attorney-client privilege and work product doctrine. To the extent applicable, Defendants shall provide a privilege log in regard to this request.

[3] Plaintiff's Second Request for Production Nos. 18 and 19 reflect requests for Kroger's affirmative action plans, and "any and all documents regarding any self-critical analysis performed regarding the AAPs." In his Motion, Plaintiff reiterates his request for these documents for all of Kroger. However, as addressed above, Plaintiff has not demonstrated that responses beyond the Cincinnati/Dayton Division are justified in this matter. And, given that Defendants have already affirmed that there are no affirmative action plans or related self-critical analyses for the Cincinnati/Dayton Division, the undersigned need not address Plaintiff's remaining arguments as to these requests.

documents for hundreds of thousands of employees in other divisions have nothing to do with this case and are not proportional to the needs of this case." (Doc. No. 39, PageID 1204). The undersigned agrees. Plaintiff has not provided sufficient justification for why responses beyond the Cincinnati/Dayton Division are necessary in this matter.

Another prominent topic centers on interrogatories and requests for production related to Kroger CEO Rodney McMullen. Plaintiff seeks information and documents related to Mr. McMullen including (1) his total compensation from 2015 to present, (2) his total compensation for 2016 through 2020, (3) projected total compensation for 2021, (4) communications by and between Mr. McMullen and any other Kroger employee regarding Plaintiff's termination, (5) documents, audio recordings and videos of speeches he has delivered as Kroger's CEO, (6) communications by and between Mr. McMullen and any other Kroger employees regarding "The Kroger Co. Values," (7) communications by and between Mr. McMullen and any other Kroger employees regarding Kroger's core values, (8) communications by and between Mr. McMullen and any other Kroger employees regarding UFCW Local 21's May 2, 2020 mailing regarding elimination of "hero" pay and his increase in compensation, (9) communications by and between Mr. McMullen and any other Kroger employees regarding the scores Kroger received in the Wall Street Journal's December 14, 2020 "C-Suite Report on The Best Management Companies of 2020," (10) communications by and between Mr. McMullen and any other Kroger employees regarding the November 2020 Brookings Institute Study, (11) communications by and between Mr. McMullen and any other Kroger employees regarding Kroger's decision to close two Seattle grocery stores after City of Seattle required hazard pay, and (12)

7

communications by and between Mr. McMullen and any other Kroger employees regarding Kroger's decision to close two California stores to avoid paying its workers hazard pay. (Doc. No. 39-2, PageID 1216, 1220-23, 1227). The requests are reflected in Interrogatory Nos. 2 and 3, and Request for Production Nos. 7, 25, 26, 27, 28, 29, 31, 32, 33, and 34. Defendants oppose these requests because they are not relevant, nor proportional to the needs of the case. (Doc. No. 39, PageID 1203).

Defendants are correct. It is important to first recognize that Plaintiff previously sought to depose Mr. McMullen, and brought the issue before the Court. The undersigned denied Plaintiff's request to depose Mr. McMullen, and granted Defendants' request for a protective order. (Doc. No. 28, PageID 1095). Plaintiff's subsequent objections were overruled. (Doc. No. 36, PageID 1176). The undersigned remains unpersuaded by Plaintiff's attempts to seek information related to Mr. McMullen. As before, the relevance of the information sought is entirely unclear. Request for Production No. 25 specifically asked for documents related to "any and all communications by and between Rodney McMullen and any other Kroger employee regarding Plaintiff's termination." (Doc. No. 39, PageID 1220). Defendants' response was "None." *Id.* There is simply nothing before the Court that suggests that Mr. McMullen was involved in Plaintiff's termination. Therefore, the undersigned declines to afford Plaintiff time to seek information and documents wholly unrelated, and not proportional to the needs of the present case.

Also, relevant here is Plaintiff's similar assertion that he should be afforded time to obtain "any and all statements made by McMullen from 2015-2021 regarding Kroger's Equal Employment Opportunity Policy and The Kroger Co. Values," because he "can

8

pursue his wrongful discharge claims based on [Kroger's aspirational] policies and McMullen's statements." (Doc. No. 38, PageID 1198). He cites to *Goldman Sachs v. Arkansas Teacher Retirement System*, 141 S. Ct. 1951 (2021) for support. *Id.* However, the undersigned remains unconvinced that discovery related to Mr. McMullen's statements are proportional to the needs of this case, which involves Plaintiff as an individual—rather than a group of shareholders in a securities-fraud class action like *Goldman Sachs*. Plaintiff presumably has access to the policies themselves, given the quoted portions in his Motion. (Doc. No. 38, PageID 1196-97). Likewise, he has already deposed several witnesses about Kroger's values, including Duane Hatfield, who allegedly "made the decision to terminate Plaintiff's employment." (Doc. No. 39, PageID 1203) (Doc. No. 39-2, PageID 1231). Thus, the undersigned declines to afford more time for discovery related to Mr. McMullen.

Plaintiff shall not be entitled to additional time to seek supplemental answers to his Second Set of Interrogatories, Interrogatory Nos. 6, 8, 11, 12, 13, 14, 25, 27, and 28. The undersigned further declines to afford Plaintiff additional time to seek supplemental production for his Second Request for Production of Documents, Nos. 1 (subparts g-i), 2, 3, 6, 8, 10, 13, 14, and 15. Plaintiff's vague assertions that Defendants' responses are "unacceptable," "incomplete," "dishonest," "evasive," "unresponsive," "not credible," or otherwise insufficient, do not permit this Court meaningful review.

### 3. Reconvened Depositions of Eric Curtis and Jessica Utterback

There are conflicting narratives related to Plaintiff's request for reconvened depositions of Eric Curtis and Jessica Utterback. Plaintiff contends that due to a miscommunication with court reporter, Veritext, regarding payment procedures, the

depositions of Mr. Curtis and Ms. Utterback could not proceed as scheduled. (Doc. No. 38, PageID 1181). He maintains that in accordance with Veritext's instructions, he paid a deposit online using his credit card, and that despite the fault of Veritext, Defendants' counsel refuses to agree to reschedule. *Id.* Defendants argue, however, that Plaintiff wrongly blames Veritext, and that Plaintiff never made an online payment as he suggests because Veritext does not accept online payments until after a deposition has occurred. (Doc. No. 39, PageID 1202). Candace Sparks, Scheduling Team Lead for Veritext, attested to these procedures and confirmed that no online payment was ever made by Plaintiff or counsel, and that there would have been no way to make such payment. (Doc. No. 39-1). Defendants now ask that Plaintiff's request to reconvene these depositions be denied in light of Plaintiff's conduct, and given that these individuals have already been deposed.

These conflicting narratives are concerning, especially in light of the confirmation from Ms. Sparks, who personally sent a credit card authorization form to Plaintiff's counsel that he was required to submit (rather than an online payment). (Doc. No. 39-1, PageID 1206). Nevertheless, the undersigned is inclined to provide Plaintiff with one final opportunity to reconvene the depositions of Eric Curtis and Jessica Utterback in light of this Court's previous Order permitting these depositions to be reconvened. (Doc. No. 28). Therefore, in accordance with that Order, Plaintiff shall be permitted to reconvene the depositions of Mr. Curtis and Ms. Utterback subject to the following limitations: (1) Plaintiff may seek testimony as to the alleged alteration of notes; and (2) Plaintiff may seek testimony arising from Defendants' responses to Plaintiff's First Set of Interrogatories and First Request for Production of Documents. (Doc. No. 28, PageID 1095-96).

### 4. Document Production Regarding Hiring Goals and Objectives, Promotion of Store Managers, Severance Packages, Kroger's Diversity, Equity & Inclusion Initiative and Deposition of Monica Garnes

Beyond the discovery requests discussed above, Plaintiff asks for time to complete discovery as to (1) hiring goals and objectives for the store manager position for 2018, 2019, 2020, (2) personnel files for five specific female employees who were promoted to store manager positions, and the documents regarding the decisions to promote them, and (3) documents related to calculation of severance packages offered to store managers in 2019, 2020, and 2021, copies of all severance packages presented to store managers during these years and the race and sex of all store managers presented with severance packages. (Doc. No. 38, PageID 1195). Plaintiff also seeks to depose Monica Garnes, Chair of Kroger's Diversity, Equity and Inclusion Initiative. (Doc. No. 39-2, PageID 1257).

Plaintiff's request for documents related to the hiring goals and objectives for the store manager position for a three-year period, including 2018, 2019, and 2020, is brief and largely overshadowed by his request for Kroger's affirmative action plans. (Doc. No. 38, PageID 1195). Nevertheless, given the presumed relevancy of hiring goals and objectives for store manager positions in the Cincinnati/Dayton Division, Plaintiff shall be permitted time to seek such documents for the Cincinnati/Dayton Division for the three-year period.

He also seeks to obtain personnel files for five specific female employees that include Kellie Hoskins, Marie Hayes, Bobbi Jo Klaserner, Teresa Stine, and Samantha Hundley, as well as documents regarding the decisions to promote them. (Doc. No. 38, PageID 1195). Defendants do not acknowledge this request in their response to Plaintiff's Motion. However, the information requested appears to be relevant, and given that the

11

scope of discovery is "traditionally quite broad," *see Lewis v. ACB Bus. Servs, Inc.*, 135 F.3d 389, 402 (6th Cir. 1998) (citing *Mellon v. Cooper-Jarrett, Inc.*, 424 F.2d 499, 501 (6th Cir.1970)), Plaintiff shall be permitted time to seek personnel files for these individuals as well as any documents regarding the decision to promote them so long as these five employees are employees of the Cincinnati/Dayton Division.

Plaintiff also shall be permitted time to seek information and documents related to severance packages—which is another request that Defendants do not squarely address in their response. However, this is not without limitation. Plaintiff's requests must pertain only to documents related to the calculation of severance packages offered to store managers in the Cincinnati/Dayton Division for 2019, 2020, and 2021, copies of all severance packages presented to store managers in the Cincinnati/Dayton Division for 2019, 2020, and 2021, and the race and sex of these store managers.

Lastly, Plaintiff has not demonstrated that he is entitled to additional time for discovery in order to depose Monica Garnes. As explained by Defendant Duane Hatfield in his deposition, Ms. Garnes works in the Fry Division in Arizona. *Id.* This means that she does not work for Kroger Limited Partnership I, but rather, a separate company "under the umbrella of the Kroger Family of Companies." *Id*. at 1258. Mr. Hatfield indicated that there is "no relationship" between Kroger Limited Partnership I and the Fry Division for which Ms. Garnes is employed. *Id.* Mr. Hatfield has not had any communications with her about the Diversity, Equity and Inclusion Initiative. *Id.* There is no indication that deposing Ms. Garnes is relevant to this case—and Plaintiff has not explained its relevance beyond asserting that, after Kroger produces certain documents he has requested (i.e.,

affirmative action plans, self-critical analysis of the plans, and hiring goals and objectives for the store manager positions), "he would like to depose Monica Garnes, Chair of the company-wide Diversity, Equity & Inclusion Initiative." (Doc. No. 38, PageID 1195). This vague assertion does not demonstrate its relevancy and is without merit.

## IT THEREFORE IS ORDERED THAT:

1. The discovery deadline be extended to December 20, 2021;

2. Plaintiff may (1) reconvene depositions of Eric Curtis and Jessica Utterback, (2) seek, subject to the limitations discussed above, supplemental responses for Plaintiff's Second Set of Interrogatories and Second Request for Production of Documents, and (3) seek, subject to the limitations discussed above, documents related to the hiring goals and objectives for the store manager position for the Cincinnati/Dayton Division for 2018, 2019, and 2020, documents for the five named female employees (so long as they are employees of the Cincinnati/Dayton Division) and documents related to severance packages for store managers in the Cincinnati/Dayton Division for 2019, 2020, and 2021; and

3. The parties confer and file a Rule 26(f) report by November 12, 2021 addressing remaining dates and deadlines for the present case.

October 22, 2021                             *s/Sharon L. Ovington*
                                                                              Sharon L. Ovington
                                                                              United States Magistrate Judge